UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

REIGN RMC, LLC,

   Plaintiff,

Versus

PRO 1 ELECTRIC, INC. and SELECT ENERGY SERVICES, LLC,

   Defendants.

Case No. 3:23-cv-858

# COMPLAINT

By and through undersigned counsel, the plaintiff Reign RMC LLC ("Reign") alleges:

## NATURE OF THE CASE

1. This is an action for false advertising and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), related state tort and unfair competition claims, breach of contract, and declaratory judgment.

## PARTIES

2. Reign RMC, LLC, is a Florida limited liability company with an address at 135 West Bay Street, Suite 400 - 4th Floor, Jacksonville, Florida 32202. The members of Reign are citizens of Florida, Wyoming, and Colorado, and none of the members of Reign are citizens of Texas, West Virginia, or Delaware.

3. Pro 1 Electric, Inc. ("Pro 1"), is a West Virginia corporation with an address at 205 Hickory St. Parkersburg, WV, 26101. Pro 1 has designated Mark E. Deem as its agent for service of process.

4. Select Energy Services, LLC ("Select") is a Delaware limited liability company with an address at 1820 North I-35, Gainesville, TX 76240. Select has designated Capitol Corporate Services, Inc., 515 East Park Avenue 2nd Floor Tallahassee, FL 32301, as its agent for service of process.

5. On information and belief, there is complete diversity between the parties.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction in this matter is appropriate pursuant to 28 U.S.C. §§ 1331, 1332, and 1338. This Court has original and supplemental jurisdiction over the claims in this Complaint that arise under state statutes and the common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims of unfair competition are joined with a substantial and related claim under the trademark laws and the other state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7. This Court has personal jurisdiction over Defendants. Pursuant to the contract between Reign and Pro 1, Pro 1 consented to jurisdiction in this Court and

venue. See Section 5 of Remote Monitoring Service Terms and Conditions, attached as <u>Exhibit A</u> (Pro 1 agreed that "any controversies or legal issues arising between the parties shall be submitted to the applicable court having jurisdiction located in the Duval County Circuit Court or United States District Court of the Middle District of Florida."). Further, Select is registered to do business in Florida and has designated an agent for service of process in Florida. Pro 1 and Select knew Reign was a Florida business with a base of operations in Florida. Pro 1 and Select knew that their actions as alleged in this Complaint would result in deception of customers in Florida and/or cause Reign to suffer damages in Florida.

8. Venue is proper pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

9. Reign designs and sells remote monitoring equipment and controls for a variety of industries, including oil and gas and wastewater customers. Some of Reign's customers use above-ground storage tanks, which may be used to hold liquids such as chemicals, brine water, fresh water, and/or oil.

10. Determining a level of fluid in an above-ground storage tank has long been a frustration, and the process of visually inspecting such tanks can be difficult and dangerous. Typically, a pump truck having a large storage unit must physically visit each tank, and a worker must get out of their vehicle and personally inspect the tank. Such inspection may require the worker to view the tank fluid level through a

window in or near the top of the tank or to physically climb up the outside of the tank and gauge the tank level by dropping a weighted line into the tank to determine the liquid level. Even when a tank level indicator is present, it may be difficult to see (especially at night), and mechanical tank level indicators are notoriously unreliable. Further, climbing up and down the tank can be hazardous, and so is exposing oneself to the gasses and vapors that accumulate in the tank itself. Gathering tank level data can be so cumbersome that workers rarely also monitor the performance and operation of tanks and related tank systems, such as pumps, sensors, and the like, in a single tank inspection.

11. Reign invented a solution. Reign developed a system for detecting tank levels and displaying them on an external indicator that is readily visible day or night. Reign's system provides for faster, more reliable tank level and performance monitoring. Reign named its solution the Visual Tank Level monitoring system ("VTL monitoring system").

12. Reign holds several patents on innovation for monitoring storage tanks, and it has filed multiple non-provisional patent applications on its VTL monitoring system.

13. Before this litigation, Pro 1 distributed and installed Reign's products for third party customers. Pro 1 was one of the first installers to express interest in learning more about the VTL monitoring system. Reign shared information about

the VTL monitoring system with Pro 1 on a confidential basis and under circumstances giving rise to a duty for Pro 1 to maintain its secrecy and limit its use.

14. In January 2023 Reign installed a prototype of its VTL monitoring system for a third-party customer, Hall Trucking. Reign's services were subject to its standard terms for remote monitoring systems, which Pro 1 agreed to when it placed the order with Reign. Attached as <u>Exhibit A</u> are Reign's Remote Monitoring Service Terms and Conditions.

15. Section 10 of the service terms confirmed Reign's ownership of technology shared with Pro 1, and Pro 1 promised not to disassemble or reverse engineer Reign's monitoring systems, including the VTL monitoring system:

> 10. Customer [Pro 1] acknowledges that the provision of the Services shall not in any manner entail the transfer of any intellectual property rights, assets and/or methodologies owned by Reign. Reign shall remain the exclusive owner of all intellectual property rights, assets and methodologies belonging to it prior to Customer receiving the Services or developed outside its scope, and which could have been disclosed to or known by the Customer in relation to the Services. Further, Customer shall not decompile, disassemble, translate, reverse engineer or otherwise attempt to derive source code of the remote monitoring system, in whole or in part. Any violation or breach of this provision shall be deemed to be a material breach of these Terms and Conditions.

16. Select also expressed interest in Reign's VTL monitoring system, estimating that it could be used on as many as 3,000 tanks in Select's portfolio. On

January 23, 2023, Reign sent a confidentiality agreement to Pro 1 to share with Select.

17. On January 24, 2023, Derrick Bennett, Select's Vice President of Operations, gave "his word" that "Select will not try to develop or start anything without a supplier like [R]eign", that "we dont [sic] want to produce anything," and that Select "just want[s] to lease or sale [sic] to their customers."

18. Pro 1 then asked to be Reign's exclusive distributor nation-wide. After Reign declined Pro 1's proposal, Pro 1 and Select stopped responding to Reign's attempt to follow up on the potential sale of VTL monitoring systems to Select.

19. In April 2023 Michael Deem, a Pro 1 project manager, began reaching out to Donald Conner, a co-inventor of the VTL monitoring system who assigned all his rights to Reign. Deem acknowledged the value and importance of Conner's research and development work to bring the VTL monitoring system to market. Deem wanted to recruit Conner to start a new business to compete with Reign. Deem called Reign "narrow minded" and proposed that Conner go into business with Deem, stating that "we will go global in 90 days." Deem offered Conner 10% equity in the business plus a salary of $100,000.

20. On May 4, 2023, Select posted to its LinkedIn Profile an image showing a visual tank monitoring system that looked virtually identical to Reign's VTL

monitoring system. Here is a side-by-side comparison of Reign's VTL monitoring system and the photograph of the system posted by Select:



| **Reign's VTL monitoring system** | **Select's LinkedIn post** |

21. Pro 1 and Select conspired to distribute a competing product without Reign's knowledge or permission. Deem admitted to Connor that Select asked him to build a knock-off copy of Reign's VTL monitoring system, which he did. Pro 1 disassembled and/or reverse engineered Reign's VTL monitoring system installed for Hall Trucking.

22. Deem continued to try to recruit Conner. Deem said Select wanted to purchase visual tank monitoring systems from Deem. Deem told Conner, "So why don't u [sic] and I do this and let them [Select] sell the product and we just make them? Also this plant I'm at [sic] we can use all our company's ideas and products

#101519523v1 7

or we can use Reigns [sic] but our company won't make much of[f] reselling [sic] what u [sic] think? With select we can have an easy way to make product at 4 of their locations rent free and they're asking for first order 1200 [sic] from our new company. So we can either keep makin [sic] John [Giese] and [R]ich [Vanek][1] wealthy or we can do what they did and make r [sic] own".

23. If stealing Reign's intellectual property was not enough, Deem also shared his plan with Connor to double-cross Pro 1's customer and co-conspirator, Select. Deem proposed to use Pro 1's relationship with Select to "buy ur [sic] VTL" and use it as an "opportunity to take all their [Select's] customers . . . ."

24. Pro 1 partnered and conspired with Select to market and sell their competing visual tanking monitoring system. Select falsely advertised to customers that it had invented or developed a new visual tanking monitoring system when it knew or should have known that Pro 1 had derived the technology from Reign.

25. On May 26, 2023, Reign sent a letter to Pro 1, demanding that Pro 1 cease using Reign's intellectual property and engaging in other unlawful conduct. Reign shared with Select a copy of the letter and other information to support its position. As of the time of this filing, Reign has not received a substantive response from Pro 1 or Select.

---

[1] John Giese and Rich Vanek are owners and members of Reign.

## COUNT I: BREACH OF CONTRACT
(Against Pro 1)

26. The foregoing allegations are incorporated by reference.

27. Pro 1 accepted Reign's Remote Monitoring Service Terms and Conditions, a copy of which are attached as <u>Exhibit A</u>. In reliance on Pro 1's acceptance of Reign's agreement, Reign shared with Pro 1 -- on a confidential basis -- Reign's proprietary VTL monitoring system for determining the fill level of storage tanks. Pro 1 also knew that Reign's technology was confidential and proprietary information of Reign, because Reign shared its technology with Pro 1 under circumstances giving rise to a duty to maintain its secrecy and limit its use.

28. Section 10 of the service terms confirmed Reign's ownership of technology shared with Pro 1 and Pro 1 promised not to disassemble or reverse engineer Reign's monitoring systems, such as the VTL monitoring system:

> 10. Customer [Pro 1] acknowledges that the provision of the Services shall not in any manner entail the transfer of any intellectual property rights, assets and/or methodologies owned by Reign. Reign shall remain the exclusive owner of all intellectual property rights, assets and methodologies belonging to it prior to Customer receiving the Services or developed outside its scope, and which could have been disclosed to or known by the Customer in relation to the Services. Further, Customer shall not decompile, disassemble, translate, reverse engineer or otherwise attempt to derive source code of the remote monitoring system, in whole or in part. Any violation or breach of this provision shall be deemed to be a material breach of these Terms and Conditions.

29. Pro 1 disregarded its promises and proceeded to disassemble or reverse engineer Reign's VTL monitoring system to develop a competing product.

30. Reign did all the essential things which the contract required Reign to do. Pro 1's breach of contract damaged Reign in an amount to be proven at trial. Reign's damages exceed $75,000, exclusive of costs.

**COUNT II: DECLARATORY JUDGMENT THAT REIGN WAS THE ORIGINAL INVENTOR OF ITS VTL MONITORING SYSTEM**
(Against All Defendants)

31. The foregoing allegations are incorporated by reference.

32. There is an actual controversy between the parties regarding who invented and owns the VTL monitoring system that Reign developed.

33. Reign seeks a judgment declaring that:

   i. Reign developed its VTL monitoring system prior to rendering services to Pro 1; and

   ii. Reign is the original inventor and exclusive owner of all intellectual property rights, assets and methodologies in such VTL monitoring system.

**COUNT III: FALSE ADVERTISING AND UNFAIR COMPETITION**
(Against All Defendants)

34. The foregoing allegations are incorporated by reference.

35. Select and/or Pro 1 made false and misleading advertisements and representations to actual and potential purchasers including that that they invented

or developed the visual tank monitoring system when, in fact, Reign invented it. Such purchasers were deceived by the Defendants' representations, which had a material effect on their decision to purchase such products from Select and/or Pro 1. Such misrepresentations affected interstate commerce.

36. In general, Customers prefer to purchase genuine products from the original source or inventor of such products rather than from a copycat. Hence, the Defendants' misrepresentations that they, rather than Reign, developed or invented the visual tank monitoring system had a material effect on purchaser's purchasing decisions.

37. The Defendants' misrepresentations were literally false, because Reign, not the Defendants, invented the VTL monitoring system.

38. For example, Select represented to a Reign customer that Select had invented or developed a new solution for determining the fill level in above-ground storage tanks using an external light indicator installed on the face of the tank. Select also told this customer that Reign stole its technology from Select. In reality, however, Pro 1 had derived its technology from Reign and provided it to Select. Select's representation was false and misleading, because Select had not invented or developed the visual tank level monitoring system and Reign never stole any technology from Select. On information and belief, Select is making the same

misrepresentations to other actual and potential customers for Reign's visual tank level monitoring system.

39. Pro 1 contributed to Select's false representations and other advertising by knowingly inducing Select to falsely represent that it had invented the visual tank monitoring system and by materially participating in such statements. Pro 1 also supplied such systems to Select for sale to purchasers who made purchasing decisions in reliance on Select's false advertising.

40. Reign has been, or is likely to be, injured as a result of the Defendants false statements.

41. Defendants have acted willfully to usurp Reign's rights, and they should be held liable to Reign for treble damages pursuant to 15 U.S.C. § 1117(a). This case is exceptional and the Court should award Reign its attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### COUNT IV: DECEPTIVE AND UNFAIR TRADE PRACTICES
(Against All Defendants)

42. The foregoing allegations are incorporated by reference.

43. The Defendants engaged in deceptive and unfair practices in the conduct of their trade or commerce, which caused Reign to suffer damages in an amount to be proven at trial.

44. Reign invented the VTL monitoring system for determining the fill level of tanks. The Defendants' conduct was deceptive because, among other things,

Select falsely represented to actual and potential customers that it had invented a visual tank monitoring system that Reign had originally developed and Pro 1 knowingly contributed to and induced Select to make such false statements.

45. The Defendants' conduct was unfair because, among other things, Pro 1 engaged in unethical and unscrupulous practices to obtain Reign's confidential and proprietary technology and reversed engineered it in violation of its promises to Reign to develop a competing product, resulting in substantial injury to Reign. Select knew or should have known that Pro 1 had obtained Reign's technology under circumstances that limited Pro 1's use and ability to reverse engineer it. But Select put its profits ahead of its business ethics by proceeding to advertise and sell Pro 1's competing product anyway.

46. Even after Reign put Select on notice that Pro 1 had engaged in these unlawful acts, Select continued to commercially exploit and profit from its unlawful partnership with Pro 1.

47. Accordingly, the Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of their trade or commerce. Such conduct offends established public policy and one that was immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and Reign.

## PRAYER FOR RELIEF

Reign respectfully prays for an order that:

    A.    Finds in Reign's favor and against Defendants on all counts;

    B.    Awards Reign all its damages, including general, special, enhanced, Reign's actual damages, the Defendants' profits, consequential damages, punitive damages, and other damages available at law;

    C.    Declares that:

        i.    Reign developed its VTL monitoring system prior to rendering services to Pro 1; and

        ii.    Reign is the original inventor and exclusive owner of all intellectual property rights, assets and methodologies in such VTL monitoring system.

    D.    Requires Defendants to perform corrective advertising, including notifying actual and potential customers of its visual tank monitoring system to inform them that Reign was the original inventor of that technology;

    E.    Requires Defendants to deliver for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements used by Defendants to pass off Reign's VTL monitoring systems as their own or that false represent that Defendants were the original developers or inventors of the visual tank monitoring system and

all plates, molds, matrices, and other means of making the same pursuant to 15 U.S.C. § 1118;

 F. Finds this case exceptional pursuant to 15 U.S.C. § 117(a);

 G. Awards Reign all its costs and attorney's fees;

 H. Enters such other relief to which Reign may be entitled as a matter of law or equity, as the Court determines to be just and proper.

       Respectfully submitted,

       JONES WALKER LLP


       */s/ Luis E. Llamas*
       Luis E. Llamas (FL Bar No. 89822)
       201 S Biscayne Blvd., Ste. 3000
       Miami, FL 33131-4341
       llamas@joneswalker.com
       T: 305.679.5700
       F: 305.679.5710

       Joseph F. Lavigne (*pro hac vice application forthcoming*)
       Micah J. Fincher (*pro hac vice application forthcoming*)
       Jacob Pritt (*pro hac vice application forthcoming*)
       201 St. Charles Ave., Ste. 5100
       New Orleans, LA 70170
       jlavigne@joneswalker.com
       mfincher@joneswalker.com
       jpritt@joneswalker.com
       T. 504.582.8000
       F. 504.589.8610

       **Counsel for Reign RMC LLC**